


UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| MATTHEW COBB, | * | CIV. 09-4110 |
| Plaintiff, | * | |
| vs. | * | **ORDER** |
| | * 1. | Motion to Strike Affidavit of Pam |
| STANLEY KNODE, Correctional Officer, SDSP; | * | Linneweber, Doc. 89; |
| R. ARNETT, CO, SDSP Visit Room; | * 2. | Motion for Expedited Ruling, Doc. |
| MARCI HARVISON, CO, SDSP Visit Room; | * | 91; |
| ROBERT KUEMPER, Associate Warden, SDSP; | * 3. | Motions for Additional Time, Docs. |
| TOM LINNEWEBER, Major, Officer-in-Charge | * | 93, 102, & 108; |
| of Special Security; DOUG LOEN, attorney, | * 4. | Motion to Compel, Doc. 94; |
| SDSP Legal Counsel; AL MADSEN, Unit Manager; | *5. | Motion to Strike Affidavit of |
| SDSP; K. WRIGHT, CO, SDSP Visit Room; | * | Rebecca Weaver, Doc. 100; |
| DOUGLAS WEBER, Warden, SDSP; | * 6. | Motion to Strike Affidavit of |
| TIM REISCH, DOC Secretary of Corrections; | * | Stanley Knode, Doc. 103; |
| MARK BIDNE, paralegal, SDSP; | * 7. | Motion to Strike Ex. A from |
| DELMAR WALTER, attorney, SDSP; | * | Affidavit of Doug Loen, Doc. 105; |
| | * 8. | Second Motion to Compel, |
| Defendants. | * | Doc. 109; |
| | * 9. | Second Motion for Appointment of |
| | * | Counsel, Doc. 111. |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## BACKGROUND

Plaintiff, an inmate at the South Dakota State Penitentiary (SDSP) filed a *pro se* civil rights lawsuit pursuant to 42 U.S.C. § 1983. In his Complaint, he alleges Defendants retaliated against him a result of his complaints about racial discrimination which he alleges occurred in connection with his visiting privileges with his mother and half-sister. Plaintiff alleges his visiting privileges with his mother and half-sister have been suspended and that Defendants have fabricated charges of inappropriate conduct by him and his mother, all because Defendant's half-sister is part black.

Plaintiff claims: (1) he has been denied access to the Courts in violation of the First and Fourteenth Amendment because prison officials have refused to assist him with his legal claims; (2) because his half-sister is part black, the Defendants have discriminated against him, in violation of

the Equal Protection Clause and the Eighth, Ninth and Fourteenth Amendments; (3) Defendants have terminated his visits with his mother and half-sister for reasons which are false, unsubstantiated and racially motivated, in violation of Plaintiff's right to privacy, free association and equal protection as guaranteed by the First, Eighth, Ninth, and Fourteenth Amendments; (4) Defendants have allowed false, libelous, discriminatory, malicious, and retaliatory reports to be placed in his permanent record where they will be used in an unfair determination of his parole eligibility, in violation of Plaintiff's due process and equal protection rights as guaranteed by the Eighth, Ninth and Fourteenth Amendments; (5) Defendants have allowed grievances to be filed contrary to DOC policy, cruelly denying Plaintiff due process as guaranteed by the Eighth and Fourteenth Amendments; (6) Defendants have allowed arbitrary, retaliatory disciplinary reports to be issued which will remain on Plaintiff's permanent record and will be used to determine his parole eligibility, cruelly denying him due process and equal protection as guaranteed by the Eighth and Fourteenth Amendments; (7) Defendants have ignored his requests to preserve for use as evidence in this litigation video tapes of his visits where inappropriate attire or conduct have been alleged, cruelly denying him due process and equal protection as guaranteed by the Eighth and Fourteenth Amendments.

In support of his Complaint, Plaintiff provided the Court with his own Affidavit (Doc. 3), as well as Affidavits from his mother (Susan Cobb) (Doc. 4) and his girlfriend (Nicole Campbell) (Doc. 5).

In his Complaint, Plaintiff seeks injunctive relief in the form of a declaration by the Court that Defendant's actions are unconstitutional. *He also seeks an Order to provide Plaintiff with copies of reports alleging impropriety by him and disciplinary reports* and expunging said reports from his record, preserving relevant video recordings and reinstating his visiting privileges with his mother. Plaintiff also seeks monetary damages in the amount of $10,000 each from Defendants Knode and Harvison and for reimbursement for costs and fees.

## DISCUSSION

### 1. Motion to Strike Linneweber's Affidavit (Doc. 89)

On March 29, 2010, Defendants filed a Motion for Summary Judgment (Doc. 82) along with supporting documents. One of the supporting documents is the Affidavit of Pam Linneweber (Doc. 88), with attachments. The attachments to the Affidavit consist of portions of Plaintiff's institutional file including informational reports, disciplinary reports, and grievances.[1] Plaintiff moves to strike Linneweber's Affidavit, asserting the documents in his institutional file should be inadmissible pursuant to Fed. R. Civ. P. 12(f) because they are insufficient, immaterial, impertinent and scandalous. Plaintiff also cites various rules of evidence, the most pertinent being Fed. R. Evid. 803(6), the business record exception to the hearsay rule. Plaintiff asserts the exception is inapplicable because the records are not trustworthy.

The issue raised by Plaintiff's Motion to Strike is whether the documents attached to Linneweber's Affidavit should be admissible at the summary judgement stage pursuant to the business record exception (Fed. R. Evid. 803(6)) to the hearsay rule. The admissibility of evidence is reviewed for abuse of discretion, even at the summary judgment stage of litigation. *Morgan v. United Parcel Service of America*, 380 F.3d 459, 467 (8th Cir. 2004). Although Plaintiff wishes to strike from the record the documents which memorialize the disciplinary actions taken against him by prison personnel, Plaintiff attached his responses to those same disciplinary actions to his own Affidavit (Doc. 3) which he filed in support of the claims he makes in his Complaint. Additionally, as part of the relief he seeks in his Complaint, he requests the Court to order the Defendants to produce the very documents he now requests stricken from the record. Plaintiff cannot have it both ways. For the reasons more fully explained in the following paragraphs, the documents contained in Plaintiff's institutional file and attached to Linneweber's Affidavit fall within the business record exception to the hearsay rule under Fed. R. Evid. 803(6).

Linneweber's Affidavit contains Exhibit A, which incorporates portions of Plaintiff's

---

[1] These are the very documents Plaintiff asks the Court to Order Defendants to produce as part of the relief he seeks in his Complaint.

institutional file. Included in Exhibit A are copies of "informational reports" by several different prison personnel (Defendants claim twenty-one, Plaintiff claims nineteen) who have written reports regarding the behavior of both Plaintiff and his mother during visitation sessions at the SDSP. Plaintiff disputes the accuracy of the information contained in the informational reports, as demonstrated by his grievance documents and other documents, attached as exhibits to his own declaration (Doc. 3) and the declaration of his mother (Doc. 4) and girlfriend (Doc. 5) submitted in support of his Complaint. Plaintiff asserts the documents he has attached to his supporting declarations proves that at least some of the claims made in the informational reports have been proven meritless. (Docs. 3-5).

A Magistrate Judge from the Western District of New York was recently faced with a similar dilemma:[2]

> Motions for summary judgment must be supported by admissible evidence. Hearsay evidence is not admissible unless it falls within an exception to the hearsay rule. Medical and prison grievance records, although hearsay, may be admissible under the business records exception to the hearsay rule. That exception renders admissible records of 'acts events, conditions, opinions, or diagnoses, made at or near the time by or from information transmitted by, a person with knowledge' but only if such records are 'kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make a memorandum, report, record, or data compilation.' Facts supporting admissibility must be supplied 'by the testimony of the custodian or other qualified witness by certification' that complies with Federal Rule of Evidence 902.

*Atkinson v. Fischer*, 2009 WL 3165544 (W.D.N.Y. Sept. 25, 2009) (citations omitted, punctuation altered). The Magistrate Judge in *Atkinson* considered the institutional records pursuant to 803(6) even though they were not properly authenticated, because both parties relied upon them in arguing their summary judgment positions. In this case, the Defendants resubmitted the institutional records with proper authentication along with the Affidavit of Rebecca Weaver (Doc. 97). Additionally, like *Atkinson*, both parties rely on institutional records to support their claims, albeit different parts of

---

[2]In *Atkinson*, the Defendant prison's motion for summary judgment was likewise supported by "prison records, including grievance records and medical records." *Atkinson v. Fischer*, 2009 WL 3165544 (W.D.N.Y. Sept. 25, 2009).

the institutional record.

Neither party cites Eighth Circuit law directly on point and the Court has found none. The Seventh Circuit, however, has repeatedly taken the view that prison institutional records are business records pursuant to Fed. R. Evid. 803(6). "A prison is clearly a business within the meaning of the term in the statute and the rule, and inasmuch as the memorandum was prepared by a member of the staff at [the prison] and was lodged in the official prison files, we conclude that it was made in the regular course of prison activity. The fact that the memorandum was retained as part of plaintiff's prison file indicates that it is the type of document routinely relied upon by prison officials." *Stone v. Morris*, 546 F.2d 730, 738 (7th Cir. 1977). Addressing the argument that such documents lacked trustworthiness because the source was not known, the Court noted such arguments should go to the weight accorded to the document, not its admissibility. *Id.* at 738-39. *Accord, Moffet v. McCauley*, 724 F.2d 581, 584 (7th Cir. 1984). "The prison official who prepared the report had a business duty and a public obligation to be accurate . . . It is clear that the report does have circumstantial guarantees of trustworthiness sufficient to meet the trustworthiness requirement of Rule 803(24). Under these circumstances, we think that the lack of more specific information concerning the preparation of the report more properly goes to its weight than its admissibility." *Id.*

Plaintiff's brief offers several reasons for the Court to conclude the disciplinary reports do not meet the trustworthiness requirement of Rule 803(6). Among them are his assertions that prison personnel were acting in their own self-interest when they wrote the reports, and that many of the reports have later been proven wrong. As explained in *Wheeler v. Sims*, 951 F.2d 796 (7th Cir. 1992), however, part of the "business" of prison personnel is to monitor and document the behavior of the prisoners. This Court has reviewed hundreds if not thousands of disciplinary reports and is aware they form the basis of all sorts of decisions made by prison personnel, including rehabilitation, parole, and maintaining the general order and discipline of the institution. Plaintiff's disagreement with the accuracy of the reports is better addressed in his Statement of Disputed/Undisputed Facts and other summary judgment papers than in a motion to strike Linneweber's Affidavit. Plaintiff's Motion to Strike (Doc. 89) is **DENIED**.

## 2. Motion for Expedited Ruling (Doc. 91)

Plaintiff filed a Motion for Expedited Ruling (Doc. 91) requesting a ruling on his Motion to Strike Linneweber's Affidavit before the twenty day deadline passed for him to respond to the Defendants' Summary Judgment Motion which was filed on March 29, 2010. The Plaintiff's deadline to respond to the Summary Judgment deadline has long passed and he has filed three Motions for Additional Time (Docs. 93, 102 & 108). Plaintiff's Motion for Expedited Ruling (Doc. 91) is therefore **DENIED** as moot.

## 3. Motions for Additional Time (Docs. 93, 102 & 108)

Plaintiff has made three motions for additional time. The first motion (Doc. 93) requests additional time to respond to Defendants' Motion for Summary Judgment. Plaintiff explains he needs to know whether Linneweber's affidavit will be stricken, and whether he will be allowed to obtain further discovery including disciplinary reports written before October 2004. Plaintiff will be allowed until November 15, 2010 to respond to Defendants' Summary Judgment Motion, but the time for discovery has closed. Plaintiff's Motion for Additional Time (Doc. 93) is **GRANTED** in part.

Plaintiff's Second Motion for additional time (Doc. 102) likewise seeks additional time to complete discovery and to respond to Defendants' Motion for Summary Judgment. Plaintiff will be allowed until November 15, 2010 to respond to Defendants' Summary Judgment Motion, but discovery has closed. Plaintiff's Second Motion for Additional Time (Doc. 102) is **GRANTED** in part.

Plaintiff's Third Motion for Additional Time (Doc. 108) seeks additional time in which to prepare a Second Motion for Appointment of Counsel. The Motion for Appointment of Counsel has now been filed. Plaintiff's Third Motion for Additional Time (Doc. 108) is **DENIED** as moot.

## 4. Motion to Compel (Doc. 94)

Plaintiff filed a Motion to Compel (Doc. 94). He seeks three categories of information. For

the following reasons, Plaintiff's Motion is be **GRANTED** in part and **DENIED** in part.

First, Plaintiff asserts Defendants' responses to his Request for Production of Documents is incomplete, because in their answers to his Interrogatories Defendants indicate several dates in which inappropriate contact between Plaintiff and his sister Izabela was "documented" but no "documents" were produced for corresponding dates in Defendants' responses to Plaintiff's Request for Production of Documents.

Specifically, Plaintiff asserts no documentation was produced for the following dates which Defendants assert inappropriate contact was documented: 12-7-06 and 9-26-07. Plaintiff makes this same assertion for instances of inappropriate contact with his girlfriend, Nicole Campbell for the following dates: 5-30-08, 10-11-08, 11-29-08, 12-30-08-, 1-2-09, 2-6-09, 4-17-09, and 10-19-09.

Plaintiff also asserts he has not received all of the "reports" pertaining to the attire and/or behavior of his mother during her visits.[3] He bases this claim on the language in the reports he has received which refer to previous reports and previous incidents.

Defendants filed a Brief and a copy of their Answers to Plaintiff's Second Set of Interrogatories and Responses to Second Request for Production of Documents. (Docs. 98-1 & 98-2). Defense counsel has explained that no further informational reports exist. Defendants also filed a Supplemental Response (Doc. 118), attaching an updated "visit summary" computer printout which consists of a log of Plaintiff's visits, along with an accurate comment section. It is apparent the comment section addresses Plaintiff's concerns regarding the dates for which there was previously provided no documentation for allegedly inappropriate contact between Plaintiff and his sister and/or his girlfriend. The updated visit summary, combined with Defendants' representation that no further

---

[3]In this regard he specifically mentions a "documented" incident dated August 18, 2006. The Defendants have provided an informational report dated August 16, 2008. It appears there was a typographical error in Defendants' Answers to Interrogatories which listed the date as the 16th instead of the 18th.

7

informational reports exist, satisfies Defendants' obligation to produce documents in response to Plaintiff's Request for Production of Documents #1. Plaintiff's Motion to Compel is **DENIED** as to this category of documents.

Next, Plaintiff moves to compel the production of any existing video tapes of his visits which depict allegedly inappropriate conduct between Plaintiff and his younger sister or his girlfriend, or which depict Plaintiff's mother's allegedly inappropriate attire or conduct. Defendants objected to the production of the tapes, claiming that to do so would jeopardize prison security. Both parties agree, however, that an *in camera* review of the video tapes is appropriate. It is therefore ORDERED that Plaintiff's Motion to Compel is **GRANTED** in part as to the video tapes as follows: any video tapes which depict conduct described in Defendants' Answers to Plaintiff's Interrogatory No. 1 shall be produced for the Court's *in camera* review not later than 10 days after the date of this Order.

Finally, Plaintiff seeks to compel the "duty roster" for the visit room on the dates for which he received informational write-ups during his visits. He asserts he needs to know who (other than the officers who wrote him up) were working in the visit room that day in order to prove the officers who wrote him up are not telling the truth. The Defendants objected to the request, asserting SDSP post orders cannot be produced for reasons of safety, order and security of the prison. Plaintiff's Motion to Compel the duty rosters is **DENIED.** Plaintiff may rely on his own recollection to submit the testimony of whomever he wishes to dispute the Defendants' claims that the conduct or attire of Plaintiff or his visitors was inappropriate.

To Summarize, Plaintiff's Motion to Compel (Doc. 94) is **GRANTED** in part and **DENIED** in part as follows: Plaintiff's motion to compel further documents in response to Plaintiff's Request for Production of Documents No. 1 is **DENIED**. Plaintiff's motion to compel production of the video tapes which depict conduct described in Defendants' Answers to Plaintiff's Interrogatory No. 1 shall be produced for the Court's *in camera* review not later than 10 days after the date of this Order. Plaintiff's Motion to Compel the duty rosters is **DENIED.**

### 5. Motion to Strike Affidavit of Rebecca Weaver (Doc. 100)

Defendants offered the Affidavit of Rebecca Weaver attaching portions of Plaintiff's institutional file after Plaintiff moved to strike the Affidavit of Pam Linneweber. Weaver's Affidavit properly authenticates Plaintiff's prison records and attaches the current version of DOC Policy 1.3.E.2 (Administrative Remedy For Inmates), along with an explanation of all the substantive changes that have been made to the policy since April, 2003 (a matter about which Plaintiff complained regarding the version of the policy attached to Linneweber's Affidavit). Plaintiff's Motion to Strike the Affidavit of Rebecca Weaver (Doc. 100) is **DENIED** for the same reasons his Motion to Strike the Linneweber Affidavit was denied.

### 6. Motion To Strike Affidavit of Stanley Knode (Doc. 103)

The Defendants submitted Knode's Affidavit in support of their summary judgment motion. Knode's Affidavit explains his employment duties at the SDSP, and attaches the Inmate Visiting Policy 1.5.D.1 and the SDSP Operational Memorandum 2.5.D.1.

Plaintiff seeks to strike Knode's Affidavit for three reasons: (1) he alleges the attached polices are the current versions but the conduct which is the subject of this lawsuit occurred between March 2002 and January 2008 rendering the 2009 versions of the policies immaterial, impertinent and irrelevant;[4] (2) Knode is not an expert and not qualified to testify about whether Plaintiff's contact with Izabela was appropriate; and (3) the remaining paragraphs in Knode's affidavit (explaining his job duties and explaining the existence of video surveillance in the visit room) are redundant to averments already made elsewhere in the record by Plaintiff and should therefore be stricken.

Defendants filed a Brief opposing Plaintiff's Motion to Strike (Doc. 110). Attached to the Brief are copies of all revisions to the Inmate Visiting Policy and the SDSP Operational

---

[4]Plaintiff does not explain how the current policies materially differ from the policies which were in effect during the relevant time frame. The Court has reviewed the revision logs and has discerned no revisions which significantly affect the claims in this lawsuit.

9

Memorandum which have been made since April, 2003. The Plaintiff's failure to explain how the revisions affect the policies' application to his case, combined with the Defendants' subsequent supplementation of the record defeats Plaintiff's assertion that the policies are "immaterial, impertinent and irrelevant." Plaintiff's Motion to Strike based on this ground is therefore DENIED.

Defendants assert they are not offering Knode as an expert, but as a fact witness. Defendants explain Knode's statement that he observed "frequent" and "inappropriate" physical contact between Plaintiff and his sister Izabela is an admissible statement of fact and if it is an opinion at all, it is lay opinion under Fed. R. Evid. 701.

Knode's job requires him to enforce the visit room policy. The policy and memorandum attached to Knode's Affidavit state the following regarding physical contact between inmates and their visitors during a "Class I" visit:

**Policy 1.5.D.1**

**Class I Visit:**
A visit conducted in a visiting room or designated visiting area of an adult DOC facility during which limited physical contact is allowed between the inmate and the visitor. Conjugal visits are not allowed at SD DOC facilities.

**Termination of a Visit**
A.   A visit can be terminated or denied under the following circumstances:
\*\*
7.   A visitor or inmate indulges in excessive physical contact.

**Operation Memorandum 2.5.D.1**

**Visit Limitations**
A.   Visitation in a correctional institution is a privilege that may be limited or terminated. Actions in the visit room that affect the safety or security of the staff, inmates and other visitors or the maintenance of order within the institution will not be tolerated and may result in a visit being curtailed and future visit privileges being suspended or terminated.

\*\*\*

10

E.  SDSP will not allow an inmate and his spouse or female friend to kiss on the lips during a visit.

   1. An inmate may embrace and briefly kiss his spouse or female friend on the cheek.

   2. Unless otherwise directed, inmates are allowed to kiss other immediate family members on the lips.

   3. Regardless of the situation that applies, the kiss and/or embrace with any visitor(s) will be brief and can only take place at the beginning and at the conclusion of the visit.

   4. The only other permissible physical contact is between an inmate and known family members during a visit will be hand holding in plain sight above the table.

F.  Failure to abide by these rules may result in disciplinary action against the inmate and restrictions or termination on the inmate's visiting privileges.


Fed. R. Evid. 701 states:

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness; (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.


Fed. R. Evid. 702 states:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The Eighth Circuit has very recently commented on the admission of "lay opinion" testimony under Rule 701. *See United States v. Smith*, 591 F.3d 974 (8th Cir. 2010). "Personal knowledge or perceptions based on experience is sufficient foundation for lay testimony." *Id.* at 982 (citations

omitted, punctuation altered). Additionally, "perceptions based on *industry experience* are a sufficient foundation for lay opinion testimony." (citations omitted, emphasis in original). A lay witnesses's opinion must not be based on scientific, technical, or other specialized knowledge--such testimony is properly within the scope of the rule governing expert testimony (Rule 702). *Id.* The inquiry is properly analyzed on a case-by case basis, examining both the witness and the opinion. *Id.*

The advisory committee notes to Rule 701 indicate the rules were amended in 2000 in an effort

> to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded trough the simple expedient of proffering an expert in lay witness clothing. Fed. R. Evid. 701 Committee notes to 2000 Amendments. The amendments served a dual purpose: First, to ensure that evidence qualifying as expert testimony under Rule 702 will not evade the reliability scrutiny mandated by the Supreme Court's decision in *Daubert v. Merrell Dow Parms. Inc.*, 509 U.S. 579, 587-88, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and second, to provide assurance that the parties will not use Rule 701 to evade the witness pretrial disclosure requirements of Fed. R. Civ. P. 26.

*M.O.C.H.A. Society v. City of Buffalo*, 2008 WL 4412093 (W.D.N.Y. Sept. 23, 2008) (citations omitted, punctuation altered). The *M.O.C.H.A* Court noted that while it is sometimes difficult to distinguish between Rule 701 testimony and expert testimony, "an essential difference is that Rule 701 requires direct personal knowledge of the factual matter at issue. Only then does it allow introduction of a limited degree of opinion testimony to help convey that information and only if the court finds that it would be helpful to the trier of fact." *Id.* Additional distinction between lay and expert testimony was made in *United States v. Frantz*, 2004 WL 5642909 (C.D. Cal.).

> Lay opinion testimony most often takes the form of a summary of first hand observations . . .it is admissible only to help the jury or the court to understand the facts about which the witness is testifying and not to provide specialized explanations or interpretations that an untrained layman could not make if perceiving the same acts or events.

*Id.* at *12. *See also, United States v. Espino*, 317 F.3d 788, 797 (8th Cir. 2003) (Fed. R. Evid. 701 allows lay opinion based on witness's perception of events).

The statements in Knode's affidavit do not purport to apply specialized or technical knowledge. Knode enforces a policy that prohibits physical contact between inmates and their visitors except holding hands and a brief kiss/embrace at the beginning and end of a visit. The inmates' visit may be terminated if the inmate and his visitor engage in "excessive" physical contact. Knode reported his observations of Plaintiff's interaction with Plaintiff's visitors compared to the standards described in the policy and memorandum. His testimony falls within the scope of a lay opinion pursuant to Fed. R. Evid. 701. Plaintiff's Motion to Strike Knode's Affidavit on the ground that it is improper expert testimony is DENIED.

Plaintiff's final objection to Knode's Affidavit is that the information it contains is redundant and impertinent. Plaintiff asserts that because his Complaint already explains Knode's job duties and the placement of video cameras, the same information should be stricken from Knode's Affidavit. The Defendants are entitled to lay the foundation for the basis of the facts stated in their affiant's declarations. Plaintiff's Motion to Strike Knode's Affidavit on the ground it contains redundant and impertinent information is DENIED.

Because Knode's Affidavit is not based on improper policies, does not contain improper expert testimony, and does not contain redundant or impertinent information, Plaintiff's Motion to Strike Knode's Affidavit (Doc. 103) is DENIED in its entirety.

### 7. Motion to Strike EX A from Affidavit of Doug Loen (Doc. 105)

Defendants filed Loen's Affidavit (Doc. 86) in support of their Summary Judgment motion. Attached as EX A to Loen's Affidavit is a copy of Loen's letter to Plaintiff dated November 9, 2009. The letter explains that because Plaintiff has named the Inmate Legal Office attorney and paralegal as Defendants in his lawsuit, a conflict of interest exists and they can no longer assist him. Loen's letter states, "A backup Legal Assistance Attorney is available to assist you with your legal needs for research, habeas corpus or § 1983 actions. The attorneys (sic) name and address are: . . ."

Plaintiff interpreted the letter to say that the backup attorney "had been appointed to assist

him in matters unrelated to this action." Plaintiff therefore moves to strike EX A from Loen's affidavit as "self-serving and irrelevant to this action." The Defendants filed a Brief in Opposition to the Motion (Doc. 110).

The Supreme Court of the United States has explicitly recognized that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries *or* adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977) (emphasis added). "[C]onsistent with the constitutional right asserted by the plaintiff, namely the right of meaningful access to the courts, the term 'adequate' as used in *Bounds* to modify 'assistance from persons trained in the law' refers not to the effectiveness of representation, but to the adequacy of the prisoner's access to his or her court-appointed counsel or other law-trained assistant." *Schrier v. Halford*, 60 F.3d 1309, 1312-13 (8th Cir. 1995). The Supreme Court later explained that "*Bounds* did not create an abstract, freestanding right to a law library or legal assistance . . . .the inmate must therefore go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 2180, 135 L.Ed.2d 606 (1996). The inmate must demonstrate that a nonfrivolous legal claim has been frustrated or is being impeded. *Id.*, 518 U.S. at 353, 116 S.Ct. at 2181 .[5] To prevail on an access to the courts claim, an inmate must show he has suffered an actual injury (*Moore v. Plaster*, 266 F.3d 928, 933 (8th Cir. 2001), and that he has suffered prejudice (*Berdella v. Delo*, 972 F.2d 204, 209 (8th Cir. 1992)). It has been noted that:

> in order for an inmate to show [inadequate legal facilities] hindered his efforts to pursue a . . . legal claim, he must show that he encountered more than mere delay or inconvenience. Indeed, a delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation. . . . In other words, if an inmate experienced delays in pursuing a . . . claim, but files acceptable legal pleadings within court deadlines, he cannot claim he was prejudiced

---

[5]The Eighth Circuit has stated, "*Lewis* limits the scope of the right of access to the courts to the filing of an action attacking a sentence or challenging conditions of confinement." *Cody v. Weber*, 256 F.3d 764, 770 (8th Cir. 2001).

14

by shortcomings in a prison's law library, because he has sustained no relevant actual injury.

*Benjamin v. Kerik*, 102 F.Supp.2d 157, 164 (S.D. N.Y 2000) *aff'd* 264 F.3d 175 (2nd Cir. 2001). *See also, Holloway v. Dobbs,* 715 F.2d 390 (8th Cir. 1983) (prisoner's access to the courts claim dismissed when prisoner was represented by counsel during time in question); *Brooks v. Buscher*, 62 F.3d 176, 179 (7th Cir. 1995) (prisons must provide access to law library or to persons trained in the law, but not both); *Brinson v. McKeeman*, 992 F.Supp. 897, 909 (W.D. Tex. 1997) ("[T]he state must furnish indigent inmates with a pen and paper to draft legal documents, stamps to mail them, and adequate opportunity to conduct legal research through access to adequate law libraries *or* access to 'persons trained in the law' or other persons who can provide legal assistance.") (emphasis added).

It appears Plaintiff misunderstands the import of Loen's letter. Loen informed Plaintiff that because the legal staff at SDSP were named in Plaintiff's lawsuit, they would no longer be able to assist him with his legal needs (including his pending case). Substitute counsel would therefore be available. Both the Eighth Circuit and the United States Supreme Court has indicated, however, a prison's duty to provide a staff attorney to adequately provide a prisoner with access to the Courts is not the equivalent of keeping an attorney on retainer for a private citizen. While the state has the obligation to provide an inmate with the capability to bring actions seeking new trials, release from confinement, or vindication of civil rights, it "has no obligation to enable the prisoners to *discover* grievances or to *litigate effectively* once in court." *White v. Kautzky*, 494 F.3d 677, 680 (8th Cir. 2007) (citations omitted, emphasis in original). "In other words, *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines . . ." *Lewis v. Casey*, 518 U.S. 343, 356, 116 S.Ct. 2182, 135 L.Ed.2d 606 (1996). Loen's letter informed Plaintiff of the boundaries of Attorney Adams' services pursuant to *Lewis*. EX A to Loen's Affidavit is not self-serving or irrelevant. Plaintiff's Motion to Strike EX A to Loen's Affidavit (Doc. 105) is DENIED.

### 8. Second Motion to Compel (Doc. 109)

Plaintiff moves to compel discovery. He seeks five categories of information. First, Plaintiff requests an answer to his Interrogatory No. 1 (Second Set) wherein Plaintiff inquires how long the

SDSP maintains copies of video surveillance tapes. The Defendants objected, claiming the interrogatory seeks information which is "confidential and cannot be disclosed to inmates for reasons of safety, order and security . . ." The Court has already ordered any surveillance videos which depict conduct by Plaintiff and/or his mother which Defendants claim inappropriate be produced for *in camera* review by the Court. Plaintiff's Motion is GRANTED in part as to Interrogatory No. 1 (Second Set) to the extent that whatever video surveillance remains shall be produced *in camera* within ten days of this Order. The Motion is otherwise DENIED as to Interrogatory No. 1 (Second Set).

Next, Plaintiff seeks to compel a more complete response to Interrogatory No. 2 (Second Set). This interrogatory requests information about who within the prison system was made aware of reports alleging inappropriate behavior between Plaintiff and his half-sister Izabela. The Court has reviewed Defendants' response to this Interrogatory and finds it is sufficient. Plaintiff's Motion to Compel as to Interrogatory No. 2 (Second Set) is DENIED.

Plaintiff seeks to compel a response to Interrogatory No. 4 (Second Set) requesting information about the credentials of Laura May, the STOP coordinator at SDSP. Defendants objected to this request as irrelevant and not likely to lead to the discovery of admissible evidence. Plaintiff asserts he should be allowed to discover Ms. May's qualifications because she reviewed a video tape and found it inconclusive. The issue in this case is whether the visit room policy was violated, not whether a sex offense occurred. The standard of behavior for the visit room is different than for determining whether child abuse and/or a sex offense has been committed. Plaintiff's Motion to Compel as to Interrogatory No. 4 is DENIED.

Plaintiff seeks to compel production of documents in response to his Request for Production Nos. 1, 3 and 4 (First Set) (informational reports which he claims exist but the Defendants claim do not exist). This subject has already been addressed above in Plaintiff's First Motion to Compel. The ruling remains the same.

Plaintiff seeks to compel production of the documents he requested in Request for Production of Documents No. 5 (Second Set) (a copy of the "pertinent" version of Policy 1.1.C.3, Reporting An

16

Abused or Neglected Child. Plaintiff asserts the version of the policy provided in response to his Request for Production is the 2010 version and its revision log was an inadequate response. Accordingly, Defendants attached to their responsive Brief the versions of the policy which were in effect from 2005 through 2009. Plaintiff is now in possession of the various versions of policy 1.1.C.3 which existed from 2005 forward. Plaintiff's Motion to Compel Production of Documents in response to Request for Production of Documents No. 5 (Second Set) is DENIED as moot.

### 8.     Plaintiff's Second Motion for Appointment of Counsel (Doc. 111)

Plaintiff requests counsel be appointed to represent him. He cites his inability to rebut the Defendants' assertions that documents they have not produced do not exist, and his general inexperience with the law and inability to conduct legal research. These are the same general arguments and claims Plaintiff made in his first Motion for Appointment of Counsel. Since that time, Plaintiff has served discovery requests upon the Defendants and ably represented himself throughout the course of the multiple motions he has filed with the Court. For the reasons already stated in the Court's Order (Doc. 79) Denying Plaintiff's First Motion For Appointment of Counsel Plaintiff's Motion is DENIED.

### CONCLUSION AND ORDER

For the reasons explained above, it is hereby ORDERED:

1. Plaintiff's Motion to Strike Linneweber's Affidavit (Doc. 89) is DENIED;

2. Plaintiff's Motion for an Expedited Ruling (Doc. 91) is DENIED as moot;

3. Plaintiff's Motions for Additional Time (Docs. 93 and 102) are GRANTED in part as follows: Plaintiff shall have until November 15, 2010 to respond to Defendants' Motion for Summary Judgment; the balance of the motions are DENIED. Plaintiff's Third Motion for Additional Time (Doc. 108) is DENIED as moot;

4. Plaintiff's Motion to Compel (Doc. 94) is GRANTED in part and DENIED in part as follows: The motion is DENIED as to Plaintiff's Motion to Compel response to Request for Production of Documents No. 1. The motion is GRANTED in part as to Plaintiff's request

for production of video tapes; however the video tapes which are responsive to Plaintiff's Interrogatory No. 1 shall be provided to the Court for *in camera* review not later than 10 days after the date of this Order. Plaintiff's Motion to Compel duty rosters is DENIED;

5. Plaintiff's Motion to Strike to Affidavit of Rebecca Weaver (Doc. 100) is DENIED;

6. Plaintiff's Motion to Strike the Affidavit of Stanley Knode (Doc. 103) is DENIED;

7. Plaintiff's Motion to Strike EX A from the Affidavit of Doug Loen (Doc. 105) is DENIED;

8. Plaintiff's Second Motion to Compel (Doc. 109) is GRANTED in part and DENIED in part as follows: the motion is GRANTED as to the request for production of the video tape depicting inappropriate behavior. Said video(s) shall be produced within 10 days of this Order for *in camera* review by the Court. The balance of the motion is DENIED.

9. Plaintiff's Second Motion for Appointment of Counsel (Doc. 111) is DENIED.

Dated this 8th day of September, 2010.

BY THE COURT:

John E. Simko
United States Magistrate Judge